UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID S.,<br><br>                Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | CASE NO. C23-750-BAT<br><br>**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE WITH PREJUDICE** |

Plaintiff appeals the denial of his application for Disability Insurance Benefits. He contends the ALJ erred by (1) failing to give specific, clear and convincing reasons for discounting plaintiff's testimony about the severity of his functional limitations; and (2) misevaluating the medical evidence, particularly the opinion and examination notes of treating psychiatrist Jacynda Wheeler, D.O. Dkt. 7. Although the record may be interpreted in the manner specified by plaintiff, the ALJ supported with substantial evidence the decision to find plaintiff not disabled for the relevant period of May 21, 2018 to December 31, 2018. The Court therefore **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 1

**BACKGROUND**

Plaintiff is currently 54 years old, completed several years of college, and has worked as a sales representative and a branch manager. Tr. 34, 41–45, 59–60. In 2020, he applied for benefits, alleging disability as of March 2006. Tr. 70. His application was denied initially and on reconsideration. Tr. 69–81, 83–89. In April 2022, the ALJ conducted a hearing, where plaintiff amended his amended onset date to May 21, 2018. Tr. 32–67.

The ALJ found that plaintiff did not engage in substantial gainful activity from the alleged onset date of May 21, 2018, through the date last insured of December 31, 2018. Tr. 17. The ALJ determined that plaintiff had the severe impairments of diabetes mellitus, peripheral neuropathy, left shoulder tendinitis, and bipolar disorder. Tr. 18. The ALJ found that plaintiff's impairment or combination of impairments did not meet or medically equal the severity of a listed impairment. Tr. 19. The ALJ assessed a residual functional capacity ("RFC") of medium work with additional physical and mental limitations. Tr. 20. With respect to the mental restrictions at issue here, the ALJ found that plaintiff can understand and remember simple, routine tasks and maintain attention and concentration for simple, routine tasks for two-hour periods; can tolerate occasional public contact or coworker contact; can adapt to occasional changes consistent with simple, routine tasks with explanation provided; and can make simple work-related decisions. Tr. 20. The ALJ determined that plaintiff could not perform any past relevant work. Tr. 24. Nonetheless, at step five of the sequential analysis, the ALJ found that through the date last insured there were jobs that existed in significant numbers that plaintiff could have performed, including janitor; laborer, stores; and cleaner, hospital. Tr. 24–26. The ALJ therefore found that plaintiff was not disabled from the alleged onset date of May 21, 2018 through the date last insured of December 31, 2018. Tr. 26.

The Appeal Council denied plaintiff's request for review and the ALJ's decision is the Commissioner's final decision. Tr. 1–5.

## DISCUSSION

The Court will reverse the ALJ's decision only if it is not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Although plaintiff advances a plausible interpretation of the medical evidence and testimony, he has not demonstrated the ALJ's decision was unsupported by substantial evidence, was the result of harmful legal error, or was based on an unreasonable interpretation of the record or the medical evidence.

**1. Plaintiff's Testimony**

Plaintiff contends that the ALJ failed to give specific, clear, and convincing reasons for discounting plaintiff's testimony about the impact of his mental limitations on his ability to sustain work activity. Dkt. 3–11, at 9–14; *see Lambert v. Saul*, 980 F.2d 1266, 1277 (9th Cir. 2020). The Court finds that the ALJ did not harmfully err by discounting plaintiff's testimony and determining instead that the assessed RFC accounted for plaintiff's limitations.

The ALJ determined that plaintiff's testimony about the intensity, persistence, and limiting effects of his symptoms was not entirely consistent with the medical evidence and other evidence in the record, particularly with his daily activities. Tr. 22–23. The ALJ noted that plaintiff alleged worsening bipolar disorder following April 2018, including "difficulty focusing, thinking linear, communicating with others, memory issues, and in reading a paragraph." Tr. 22;

*see* 48–49. The ALJ acknowledged, however, that plaintiff did not require hospitalization until after the date last insured. Tr. 22 (citing Tr. 515 (record of Aug. 23, 2019 emergency room visit in which plaintiff was released to home)). In contrast, around the alleged onset date in May 2018, plaintiff admitted his mood was relatively stable in the context of significant life stressors. Tr. 22 (citing Tr. 1013 (record of May 9, 2018)). Although psychiatric examination notes between May and December 2018 revealed some mood/affect variations, plaintiff's thought process remained linear, logical, and goal directed without abnormal content; he was attentive and had intact memory; and his insight and judgment were mostly normal. Tr. 22 (citing Tr. 968 (Dec. 12, 2018), 975–76 (Nov. 21, 2018), 981 (Oct. 12, 2018), 985–86 (Sept. 14, 2018), 991 (Aug. 8, 2018), 996 (July 10, 2018), 1001–02 (June 6, 2018), 1007 (May 21, 2018), 1012 (May 9, 2018). The ALJ further concluded that the psychiatric examination notes referred to activities of daily living that suggested fewer limitations than did plaintiff's testimony. For example, plaintiff "was documented working on his business, new projects, working 16 hours daily, launching a booth, having a backup plan, rebuilding business ties, [and] working with local client[s resulting in] decreased travel to Seattle." Tr. 23 (citing Tr. 971, 975, 977, 981, 985, 999, 1006). Furthermore, the ALJ stated that despite plaintiff's testimony about staying home, he reported enjoying summer kayaking and boating. Tr. 22 (citing Tr. 971[1]).

        The Court agrees with plaintiff that the ALJ erred by discounting his symptom testimony by noting that though he testified to staying at home, plaintiff engaged in kayaking and boating. It was inaccurate for the ALJ to conclude that plaintiff testified to "staying home," when he stated that "I rarely leave Anacortes" and "[i]f I do, I don't go anywhere that I'm not familiar

---

[1] The ALJ cited an incorrect page. References to plaintiff "enjoying the summer, kayaking and boating" are made in Dr. Wheeler's July and August 2018 notes. Tr. 991, 996. Regardless, plaintiff does not dispute that he engaged in these activities.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 4

1  with" because of "[a]nxiety dealing with people, going out in public, being around in busy places
2  like grocery stores, but also driving." Tr. 53. Anacortes is a small town located at the Strait of
3  Juan de la Fuca and is surrounded on three sides by water. That plaintiff reported enjoying
4  kayaking and boating in the immediate vicinity of his hometown does not contradict his
5  testimony that he rarely left Anacortes or familiar locales due to anxiety with dealing with
6  people, going out in public, or being in busy places. Nonetheless, the Court finds that the ALJ's
7  repeated references to kayaking and boating undermining plaintiff's testimony constituted
8  harmless error. The ALJ's other reasons for discounting the severity of plaintiff's testimony
9  about his mental limitations—inconsistency with the psychiatric examination notes and daily
10 activities that involved significant planning and long workdays during the period at issue—were
11 specific, clear and convincing.

12        The Court is mindful that symptoms from impairments such as bipolar disorder can wax
13 and wane. *See Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017). It furthermore is
14 undisputed that plaintiff was diagnosed with bipolar disorder with treatment-resistant depression,
15 ADHD, and insomnia as far back as 2008, *see* Tr. 873, yet alleges an onset date of disability in
16 May 2018 and has a date last insured of December 2018. In reviewing the medical and
17 psychiatric record as far back as May 2012 through February 2022, the Court is unable to
18 conclude that the ALJ engaged in inappropriate "cherry picking" through the record by
19 determining that plaintiff's mental symptomology from May to December 2018 was consistent
20 with the assessed RFC for the relevant period instead of with plaintiff's testimony. Contrary to
21 plaintiff's assertion, the ALJ could reasonably acknowledge, as did treating psychiatrist Dr.
22 Wheeler, that plaintiff required hospitalization or emergency room treatment for his symptoms
23 only in 2019 after the date last insured, i.e., not during the relevant time period. Tr. 22; *see* Tr.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 5

873; *see also see also* Tr. 515 (Aug. 2019 emergency room visit for suicidal ideation where plaintiff was discharged to home), 607 (March 2019 primary care note mentioning plaintiff being "hospitalized" twice for bipolar condition within last few months without referring to specific incidents, records, or dates), 619 (Jan. 2019 emergency room visit for suicidal ideation where plaintiff was discharged to home). That observation implied that records from January 2019 onward—including emergency room visits and the beginning of electroconvulsive therapy, *see, e.g.*, Tr. 305, 607, 619—might suggest greater limitations than those assessed in the RFC. *But see* Tr. 623 (in December 2018, on-call physician recording telephone call with plaintiff who was feeling emotionally distressed but not feeling suicidal or homicidal and who was advised to go to ER if an emergency arose). Although plaintiff argues that the debilitating symptoms began in May 2018 and involved rapid deterioration, the plausibility of plaintiff's alternative interpretation of the evidence does not undermine the reasonableness of the ALJ's determination that the assessed RFC accounted for the severity of plaintiff's symptoms from as early as 2012 until the date last insured of December 31, 2018. *Compare, e.g.*, Tr. 929 (in September 2014, plaintiff reporting inability to think clearly and make decisions but working 70 to 80 hour weeks over three years on business that fails to launch), *with* Tr. 999 (in June 2018, plaintiff referring to working 16 hour days with only Sunday as a planned day off during the week).

The Court finds that plaintiff has failed to demonstrate that the ALJ's decision to discount plaintiff's testimony was unsupported by substantial evidence or the result of harmful legal error.

**2.  Medical Evidence and Dr. Wheeler's Treating Opinion and Notes**

Plaintiff argues that the ALJ misevaluated the medical record, particularly with respect to treating psychiatrist Dr. Wheeler's March 2022 opinion and years of treatment notes. The Court finds that the ALJ did not harmfully err when evaluating the medical evidence, including

examining the supportability and consistency of Dr. Wheeler's March 2022 opinion and examination notes.

The ALJ considers the persuasiveness of medical opinions using five factors (supportability, consistency, relationship with claimant, specialization, and other), but supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), (c) (2017). The ALJ must explain in the decision how persuasive he or she finds a medical opinion(s) and/or a prior administrative medical finding(s) based on these two factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017). The ALJ may, but is not required to, explain how he or she considered the other remaining factors, unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017). Nevertheless, an ALJ cannot reject a doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Woods*, 32 F.4th at 792.

In a March 7, 2022 psychiatric/psychological report on residual functional capacity, Dr. Wheeler diagnosed plaintiff with bipolar disorder, ADHD, and insomnia. Tr. 873. Dr. Wheeler opined that plaintiff was either not limited or was mildly or moderately limited in most domains, and was markedly limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 874–76. Dr. Wheeler stated that the earliest date that the symptoms and limitations in the evaluation applied was 2012 by clinic records, and was at least 2017 based on personal evaluation. Tr. 878. The ALJ's assessed RFC

accounted for the marked restrictions on detailed instructions, and the mild or moderate restrictions in the other social and mental domains, by limiting plaintiff to understanding and remembering simple, routine tasks and maintaining attention and concentration for simple, routine tasks for two-hour periods; tolerating occasional public contact or coworker contact; and adapting to occasional changes consistent with simple, routine tasks with explanation provided; and making simple work-related decisions. Tr. 20. Plaintiff therefore challenges the ALJ's failure to adopt in the RFC the opined marked restriction on plaintiff's ability to complete a normal workweek and to perform at a consistent pace. Tr. 875.

      The ALJ discounted Dr. Wheeler's psychological RFC assessment as not supported or consistent with the evidence because Dr. Wheeler's own treatment notes documented that plaintiff was doing well despite operating a business while experiencing significant life stressors, and was enjoying summer kayaking and boating. Tr. 23–24. As stated above, the Court rejects the ALJ's citation to plaintiff's kayaking and boating during the summer as a reason for suggesting that plaintiff did not suffer from the opined mental limitations. The erroneous citation to irrelevant water activities was, however, harmless because the ALJ reasonably referred to the inconsistency between Dr. Wheeler's opined restriction on being able to complete a workweek and plaintiff's ability to work up to 16-hour days despite significant stressors during the relevant period. *See, e.g.*, Tr. 971, 975, 977, 981, 985, 999, 1006. Moreover, as also discussed above, throughout the relevant period, Dr. Wheeler's examination notes showed that plaintiff's thought process remained linear, logical, and goal directed without abnormal content; he was attentive and had intact memory; and his insight and judgment were mostly normal. *See, e.g.*, Tr. 968, 975–76, 981, 985–86, 991, 996, 1001–02, 1007, 1012.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 8

The Court finds that plaintiff has failed to demonstrate that the ALJ's evaluation of the medical evidence, particularly Dr. Wheeler's March 2022 and treatment notes, was unsupported by substantial evidence or the result of harmful legal error.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 22nd day of December, 2023.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge